And we'll move to our next case this morning, which is the United States against Alfred Jerry. And I believe we have Mr. Wasserman by Zoom. Good morning. And Ms. Boyle is here in the courtroom. Good morning. Can you hear me? Yes, you. Good morning. All right. You may proceed. Yes, much better. I'm sorry. Okay. I had it on. I was listening to all the arguments. All right. Go ahead. All right. We're here after a resentencing. We're here because, in my view, this procedure was unfairly unbalanced. The reason for that is that the U.S. Attorney comes in and, by way of background, this is a case that originated in state court. It's an armed robbery of a cell phone. And Mr. Jerry was taken into custody in May of 19, and then the feds picked this up in June of 2019. There were some significant pretrial procedures, but ultimately the government doesn't offer a plea agreement. There isn't one in the record that Mr. Jerry declined. There's never an offer of a plea agreement. So what that means is we ultimately get to sentencing, and the government comes in and asks for what I think, because they did it at the resentencing hearing as well, a sentence of 365 months, which I think is beyond the statutorily allowed time. It's certainly way beyond guidelines. And so it struck me as unbalanced and unfair because the government doesn't offer a plea. There's not going to be a Loeffler argument or a Frey argument or a Santabello argument because the government can come in at sentencing and recommend anything, reasonable or not. What the judge did in the first sentencing was say, no, I'm not going to do 365 months. He did do 264 months, 22 years. And then because of this court and other circuit courts rulings, which ultimately resulted in Taylor earlier this year, comes back and the government comes in at the resentencing and says, that's nice. I'd still recommend 365 months, 30.5 years. But, Judge, I know you're not going to do that because you didn't do it at the first sentencing. I'm still going to recommend and did the same sentence, 264 months. And the problem that I have when I read the court's sentencing pronouncement is that the court never addresses why the government is recommending a range. And they've done so twice, way beyond what the guidelines call for. The government explains that they're doing this because of this court's, what he refers to as the esoteric application of the categorical approach. I hope Taylor has resolved that. But it didn't make any difference to this prosecutor back in February that this court had already resolved that and now the Supreme Court has. So the only time the district court counsels, if you will, the government is when the district court says, as a matter of personal belief, this guideline range that we end up with, the 51 to 63, I think that's frankly ridiculous. But then I'm only a district judge. And so what do I know? That's page 29 of document 83. And I've, of course, referred to it in the brief. Well, in my view, you do have to know. I don't think there's a time really to be flippant in a sentencing with this much time at stake, especially whereas here there's no plea agreement. Now, in the Eastern District, as I think everybody knows, we have these 17 page plea agreements. But they're important in the context of this case because within that written plea agreement, defense counsel indicates to the court that they've explained and gone over the guidelines with their client before the plea is taken. But we don't have that here. I'm going to imagine that trial counsel certainly explained to Mr. Jerry in the first instance what the guidelines meant. I don't think she would have explained to him or he would have explained to him. By the way, I know the government's going to go three times or four times with the guidelines, and the judge might do that, too. You're not going to get a plea if that's the discussion. But then we come back. And I'm quite certain because you can read it in the sentencing transcript that trial counsel clearly demonstrated that what she and Mr. Jerry were relying upon in entering this naked plea for the guideline. And now in terms of time and practice, it seems that things have flipped. Now we have the government and the court saying we're going to ignore the guidelines. And we have the government weaponizing 3553A to recommend once again 264 months in the transcript. It says I'd recommend the 365. But I know you're not going to do that. And then coming in on appeal, saying, by the way, this is all reasonable because the court didn't do the 264 that was an absurd request to begin with. So the district court is reasonable because they didn't go along the clearly unreasonable sentence that I recommended. That's the government's argument right here. So I think it's unbalanced. So it would balance it. And then I'll limit my time. What would balance it didn't happen here. That would have been in the district court's sentencing pronouncement some indication of how this becomes a more balanced and fairly balanced procedure. And as I read this, I don't see the district court ever doing that in this case. If I could ask you. The only thing that changed between the original sentencing and the resentencing, as I understand it, was the assessment of whether Hobbs Act robbery is categorically violent under the career offender guidelines. Is that right? It's right, but not complete. The only other thing that changed and the ticket acknowledged was Mr. Jerry's performance, if you will, while incarcerated in one of the worst prisons in America, McCreary. And that's another instance where I think the imbalance just jumps out because what the attorney did, despite Mr. was, he said, knowing that he was going to be resentenced by this court, certainly knowing that his case was on appeal originally during all of the time he's been in BOP, knowing for much of the time that he was going to be resentenced by this court. In other words, it doesn't matter what this Jerry did. Nothing about the crime itself has changed. Well, he did. He did win a substantially lower sentence in this resentencing. Correct. Well, yes, I went to 171 months, but that's still over the guidelines. Still the departure. If you want to call it that from the guidelines, but we've. Well, let me let me put the question to you this way. Suppose we were to agree with you and remand for a third sentencing in this case, sentencing commission several years ago floated some proposed amendments. I think they're going to be part of the next batch of proposed amendments, but they've already been published. Proposing to get away from the strict adherence to the categorical method in applying these recidivist or similar aggravating enhancements based on classifications of offenses. And they said in the guidelines, basically the proposals is to concentrate more where you've got reliable evidence about what the defendant actually did than worry about the hair splitting that we do in applying the categorical method. So if we were to send this back to Judge Mim, I believe the law would allow him to take advice from those proposed amendments and say, I'm going to worry about which is frankly consistent with our case law. I'm going to worry about what this defendant did, not how other people might have been able to violate the Hobbs Act. And I'm going to sentence him to 264 months again. Would that be unlawful, unreasonable? Well, at the district court judge properly looked at and considered the guidelines that would be OK, but that didn't happen here. So the problem is, I agree. What do you do to send it back a third time to maybe get the same result? But you don't have any other remedy to offer him, Mr. Jerry, if in fact the court concludes that he's entitled to something. There isn't anything else to be done. So, yes, he might take his chances at a third sentencing. But I want the district court to consider Mr. Jerry's allocation, which I thought was amazing, and to consider the other mitigating circumstances from the first sentencing, which weren't considered, and to really pay attention and not call the guidelines ridiculous. And then we'd be in the position that I think the court is potentially proposing we might be in. But there isn't anything else to do for Mr. Thank you. Thank you very much. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel, my name is Catherine Boyle on behalf of the United States. Your Honors, I'd like to start out just by correcting a couple of points of fact in opposing counsel's argument. The government did not, in its initial recommendation, at the first sentencing, recommend a sentence that was above the statutory maximum. The government's recommendation was within the statutory range. And then additionally, at the resentencing, the government recommended a sentence of 264 months. It merely noted that its original recommendation, which was in the 300 range, was still supportable. Your Honor, the district court here imposed a procedurally sound and substantively reasonable sentence on remand. Certainly it varied above the guidelines range, but it did so in consideration of the 3553A factors. In particular, Mr. Jerry's violent conduct in history, as was encouraged by this court in cases such as United States v. Carter. First, let's look at what the district court did. There was no procedural error here. The district court correctly calculated the guideline range, and it recognized that the range wasn't mandatory. Certainly the court said it was ridiculous, but the court also said that the new sentence would reflect that guideline range, which it did. It was a 93-month decrease from the previous sentence. The court also very carefully weighed the 3553A factors. The court first talked about the difficulty it had in balancing the serious and violent nature of the offense conduct in this case, and Mr. Jerry's history, which was serious and violent as well, with the trauma he had suffered and his rehabilitative efforts while in prison. The court correctly talked about the nature and circumstances of the case. It described it as being a heartbeat away from murder, which it was. This was a case where Mr. Jerry went into a cell phone store waving a gun, pointing it at individuals, telling them, move, don't move, I'm going to shoot you, and giving terrifying and contradictory commands to the male and female employee of the cell phone store. We also know that Mr. Jerry came into this robbery having previously shot somebody in the back. Describing this crime as a heartbeat away from murder was entirely accurate. In terms of Mr. Jerry's history and characteristics, the district court was very thoughtful. It described Mr. Jerry as somebody who had suffered but also had caused other people to suffer through his actions in this case and in his prior cases. The court also considered other sentencing goals. The one that it really focused on was adequate deterrence, and it noted that that was a point of difficulty with Mr. Jerry. The court relied on accurate and updated information, and in the end it landed on the sentence of 171 months. That was between the government and defense counsel's recommendations of 107 and 264 months respectively, and it was a significant decrease reflecting the new guideline range. The defense's arguments to the contrary here simply are not meritorious. First, defense counsel says that the district court should not have permitted the government to argue that the career offender range applied. The government didn't argue that. The government completely agreed that based on the categorical approach and this court's ruling in Bridges, Mr. Jerry was no longer a career offender. The government merely encouraged the court to use its discretion under 3553A to consider what Mr. Jerry had actually done in this case. Furthermore, even if the government had made an incorrect argument, which it didn't, there would be no procedural error for the court to listen to that argument. The court correctly determined Mr. Jerry was not a career offender, and it didn't take the government's recommendation on this case. The court considered the new guideline range, and additionally, the court offered sufficient reasons for the upward variance. As I've discussed, it was the significant trauma to the victims who were not even able to work at the cell phone store anymore after this robbery, and its particular concern that when Mr. Jerry got out in times of stress, he reacted with violence, and the court was very worried that when Mr. Jerry got out again, the same thing would happen. Your Honor, if you have no further questions on the substance of reasonableness of the sentence, I'll request that the court affirm and rest on the arguments in our briefs. Thank you very much. Thank you, Your Honors. Mr. Wasserman, your time had expired, but we kept you at the microphone with late questions, so you may have an additional minute in rebuttal if you have something you'd like to add in response to Ms. Boyle's argument. I would just respond to Ms. Boyle's statement about the statement. In fact, page 14 of Document 83, Mr. Miller, at the last sentencing, the United States recommended a sentence of 365 months imprisonment, which we felt was appropriate, and today would still be our recommendation if the court had not already made it clear where it stood on those factors. So that is what Mr. Miller said. It's inferentially asking for that same sentence. The only other thing that I wish to say is, again, I understand the court's concerns about what do we do here, but a resentencing or not really is the only alternative. I want to thank the court for allowing me to appear by video. Yes, and thank you to both counsel. The case is taken under advisement.